1           **UNITED STATES DISTRICT COURT**

2       **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE ANDRÉ BIROTTE, JR., U.S. DISTRICT JUDGE**

4

5   **UNITED STATES OF AMERICA,**          )
                                           )
6                   **Plaintiff,**         )
                                           )
7       **v.**                             )   **Case No. CR 21-351 AB**
                                           )
8   **JOHNNY RAY GASCA,**                  )
                                           )
9                   **Defendant.**         )
    _____   )

10

11       **REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS**
                    **STATUS CONFERENCE**
12               **MONDAY, MAY 23, 2022**
                      **9:06 A.M.**
13              **LOS ANGELES, CALIFORNIA**

14

15

16

17

18

19

20

21

22   _____

23       **MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR**
                  FEDERAL OFFICIAL COURT REPORTER
24                350 WEST 1ST STREET, ROOM 4455
                  LOS ANGELES, CALIFORNIA  90012
25                      (213) 894-2305

1                          **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4          E. MARTIN ESTRADA
           United States Attorney
5          BY:  KEVIN B. REIDY
                Assistant United States Attorney
6          312 North Spring Street
           Los Angeles, California  90012
7

8     **FOR THE DEFENDANT:**

9
           LAW OFFICE OF CARLOS L. JUAREZ
10         BY:  CARLOS L. JUAREZ
                Attorney at Law
11         P.O. Box 2464
           Riverside, California  92506
12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  |  |  |
|---|---|---|
|  | 1 | MONDAY, MAY 23, 2022; 9:06 A.M. |
|  | 2 | LOS ANGELES, CALIFORNIA |
|  | 3 | -oOo- |
|  | 4 | (The following is a partial transcript |
| 08:54AM | 5 | of the proceedings:) |
|  | 6 | THE COURTROOM DEPUTY:  Calling Criminal Case 21-351, |
|  | 7 | United States of America versus Johnny Ray Gasca. |
|  | 8 | Counsel, please state your appearances. |
|  | 9 | MR. REIDY:  Good morning, Your Honor.  Kevin Reidy |
| 09:06AM | 10 | on behalf of the United States. |
|  | 11 | THE COURT:  Good morning. |
|  | 12 | MR. JUAREZ:  Your Honor, good morning. |
|  | 13 | Carlos Juarez on behalf of Mr. Johnny Ray Gasca. |
|  | 14 | THE COURT:  All right.  Good morning to you both. |
| 09:07AM | 15 | Mr. Gasca, can you hear me? |
|  | 16 | THE DEFENDANT:  Yes, Your Honor.  Good morning. |
|  | 17 | THE COURT:  Okay.  All right.  My apologies for the |
|  | 18 | delay this morning. |
|  | 19 | So I guess -- I'm just trying to understand what's |
| 09:07AM | 20 | going on here.  Before we get too far into -- Mr. Gasca, are |
|  | 21 | you saying -- well, let me rewind for a second. |
|  | 22 | Mr. Gasca, you had another lawyer when you first got |
|  | 23 | this case; right? |
|  | 24 | THE DEFENDANT:  Yes. |
| 09:07AM | 25 | THE COURT:  Okay.  And then you asked to -- for |

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 09:07AM | 5 |

1    whatever reason, you wanted a different lawyer; right?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And at that time -- what's that?

4              THE DEFENDANT:  With the utmost respect, it wasn't

5    for whatever reason.  For six months, he did absolutely nothing

6    for my case.

7              THE COURT:  Okay.  So we had a conversation; right?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And I said, okay, I'm going to get you a

10   lawyer.  If you come back with something, we're going to have a

11   serious discussion; right?

12             THE DEFENDANT:  Yes.

13             THE COURT:  So now you're back.  And you sent a

14   letter to the Court -- what?  You want to fire Mr. Juarez now?

15             THE DEFENDANT:  Yeah.  Well, if we can speak

16   ex parte, I don't want the prosecutor to hear what I have to

17   say.

18             THE COURT:  Okay.  So let me ask the Government to

19   please leave.

20             And is there someone with you in the audience?

21             MR. REIDY:  No, Your Honor.

22             THE COURT:  I'm sorry.

23             UNIDENTIFIED SPEAKER:  I'm with the City of

24   Los Angeles.

25             THE COURT:  Okay.  Yeah, if you wouldn't mind.  If

1    you can just step out so I can have the courtroom clear for

2    this conversation.

3                              * * * * *

4                    (Whereupon sealed proceedings were held:)

09:24AM    5                              * * * * *

6              THE COURT:  So we're back on the record in this

7    case.  The prosecutor is now in the courtroom.

8              Reluctantly I'm going to grant the motion as it

9    relates to relieving Mr. Juarez.

09:24AM   10              So, Mr. Juarez, thank you for your time and service.

11    And so, Mr. Juarez, you will be relieved as counsel.  So you

12    can get off the call, and now we need to deal with the next

13    issue.  Okay?  Thank you, Mr. Juarez.

14              MR. JUAREZ:  Thank you, Your Honor.

09:24AM   15              Good luck, Johnny.

16              THE COURT:  Well, our courtroom deputy -- well, my

17    courtroom deputy may be in contact with you because I've got to

18    figure out this whole issue about standby counsel.  And to the

19    extent that standby counsel is appointed, we're going to need

09:25AM   20    to get whatever files you have over to standby counsel.

21              MR. JUAREZ:  Not a problem, Your Honor.

22              THE COURT:  All right.  Thank you.

23              MR. JUAREZ:  All right.  Thank you.

24              THE COURT:  All right.  Mr. Reidy, I need you to --

09:25AM   25    I'm going to ask you some questions about the charges, the

elements of the offense, and the possible consequences.  So if you could -- to the extent you can get that information ready.

So, Mr. Gasca, we're now in open court.  I just want to make sure I understand.  Okay?  You want to waive your right to counsel.  You want to represent yourself because you're not satisfied with the work that either of the other two lawyers have done for you; correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now, just so we're clear, you're charged with a serious crime.  Do you know what the charges are against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Tell me what they are.

THE DEFENDANT:  Kidnapping and extortion.

THE COURT:  Okay.  And I'm going to have the prosecutor just outline the elements and the penalties for those offenses.

Mr. Reidy.

MR. REIDY:  Yes, Your Honor.

Just to clarify, Mr. Gasca is also charged with two counts of obstruction of justice and one count of witness tampering.  There's a superseding Indictment involved in the case.

THE COURT:  Okay.  So let's -- how many -- I want to know all the counts that have been leveled against Mr. Gasca.

09:26AM

09:26AM

09:26AM

09:26AM

09:27AM

1          MR. REIDY:  Yes, Your Honor.  Count 1 alleges a

2    violation of kidnapping, Count 2 alleges a violation of

3    extortion, Counts 3 and 4 allege violations of the obstruction

4    of justice statute, and Count 5 is the witness tampering

5    charge.

6          THE COURT:  Okay.  Did you know that, sir?

7          THE DEFENDANT:  Yeah.

8          THE COURT:  Okay.

9          THE DEFENDANT:  To this day, I don't know the

10   elements of the witness tampering.  My attorney wasn't able to

11   explain it to me either.

12         THE COURT:  Okay.  So I'm going to have you listen

13   carefully because the prosecutor -- if you could, if you can

14   lay out the elements of all the charges because I want to make

15   sure Mr. Gasca understands what he's dealing with.

16         MR. REIDY:  Yes, Your Honor.

17         In order to prove a violation of Count 1, which is

18   kidnapping within the special maritime and territorial

19   jurisdiction of the United States, in violation of Title 18,

20   United States Code, Section 1201(a)(2), the Government must

21   prove the following:

22         First, the defendant seized, kidnapped, abducted,

23   carried away, or decoyed or inveigled the victim within a

24   location within the special territorial and maritime

25   jurisdiction of the United States; and

1          Two, the defendant held the victim against her will.

2          In order to prove a violation of Count 2, which is

3   interference with commerce by extortion, in violation of

4   Title 18, United States Code, Section 1951(a), the Government

09:27AM  5   must prove the following:

6          1.   The defendant induced, intended to induce the

7   victim to part with property by the wrongful use of actual or

8   threatened force, violence, or fear; and

9          2 -- I'm sorry.

09:27AM  10         2.   The defendant obtained the property with the

11  victim's consent;

12         The defendant acted with the intent to obtain the

13  property as to the third element; and, finally

14         Commerce from one state to another was affected in

09:28AM  15  some way.

16         THE COURT:  The obstruction?

17         MR. REIDY:  Yes, Your Honor.  Sorry.  I apologize.

18         In order to prove a violation of Counts 3 and 4,

19  which is obstruction of justice, in violation of Title 18,

09:28AM  20  United States Code, Section 1512(b)(1)(B), the Government must

21  prove the following:

22         1.   The defendant attempted to corruptly persuade

23  another person;

24         2.   The defendant acted knowingly; and

09:28AM  25         3.   Defendant acted with the intent to cause or

1    induce any person to alter, destroy, mutilate, or conceal an

2    object with the intent to impair the object's integrity or

3    availability for use in an official proceeding.

4              Finally, in order to prove a violation of witness

09:28AM    5    tampering, as charged in Count 5, that's in violation of

6    Title 18, United States Code, Section 1512(b)(3), the

7    Government must prove the following:

8              1.  Defendant knowingly attempted to corruptly

9    persuade another person to withhold information from a law

09:29AM    10   enforcement officer;

11             2.  Defendant had the intent to hinder, delay, or

12   prevent the communication to a law enforcement officer; and

13             3.  The information related to the commission or

14   possible commission of a federal offense.

09:29AM    15             THE COURT:  Okay.  Sir, did you understand the

16   elements of all the charges?

17             THE DEFENDANT:  Yeah.  It's that last one that I

18   don't understand how this case --

19             THE COURT:  No.  Look, I'm not -- hold up.  I'm just

09:29AM    20   asking, do you understand what he said as far as the elements

21   of the charges?  I'm not asking for your defense.

22             THE DEFENDANT:  Sure.

23             THE COURT:  Well, hold up.  Are you saying you --

24   you want him to repeat it again?

09:29AM    25             THE DEFENDANT:  No.  When I discussed with my

lawyer, he said I -- I didn't understand what this third

charge, witness tampering, is.  He read it and he read the

charges --

THE COURT:  No, no, no.  I get that, but that's your

defense.  I'm asking, though, do you understand the elements?

You're going to have a trial, we'll deal with all that.  I'm

just asking, do you understand the elements of the offense?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And do you know what the possible

consequences of your conviction, if you are convicted, would

be?

THE DEFENDANT:  Yeah.  30 to life.

THE COURT:  Okay.  Just so we go through it,

Mr. Reidy, can you go over the maximum penalties?  And these

are maximum penalties, so -- the maximum.

MR. REIDY:  Yes, Your Honor.

For Count 1, kidnapping, in violation of Title 18,

United States Code, Section 1201(a)(2), the maximum penalties

are life imprisonment, five years of supervised release, a fine

of $250,000 or twice the gross gain or gross loss resulting

from the offense, whichever is greatest, and a $100 special

assessment.

The maximum penalty that can be imposed for Count 2,

interference with commerce by extortion, in violation of

Title 18, United States Code, Section 1951(a), is 20 years'

maximum term imprisonment, three years supervised release term
maximum, a fine of $250,000 or twice the gross gain or gross
loss resulting from the offense, whichever is greatest, and a
$100 special assessment.

09:31AM    For Counts 3 and 4, which is obstruction of justice,
in violation of Title 18, United States Code,
Section 1512(b)(2)(B), the statutory maximum penalty that can
be imposed is 20 years in custody, three years of supervised
release, a fine of $250,000 or twice the gross gain or gross
09:31AM    loss resulting from the offense, whichever is greatest, and a
$100 special assessment.  And that applies to each Counts 3 and
4.

    Finally, Count 5, witness tampering, in violation of
Title 18, United States Code, Section 1512(b)(3), the statutory
09:32AM    maximum penalty that can be imposed is 20 years' imprisonment,
a three-year term of supervised release, a fine of $250,000 or
twice the gross gain or gross loss resulting from the offense,
whichever is greatest, and a $100 special assessment.

    So in total, the statutory maximum penalty that can
09:32AM    be imposed for all the charges is life imprisonment, a
five-year term of supervised release, a fine of $1,250,000, and
a $500 special assessment.

    THE COURT:  Sir, did you understand everything that
the prosecutor just said?

09:32AM    THE DEFENDANT:  Yes, Your Honor.

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | THE COURT:  Okay.  Now, you have the right to be                |
|       | 2  | represented by a lawyer, but you also have the right to         |
|       | 3  | represent yourself in certain circumstances.  I've got to ask   |
|       | 4  | you these questions before I can determine whether you can      |
| 09:33AM | 5 | represent yourself.                                            |
|       | 6  | Do you have any legal education or training?                    |
|       | 7  | THE DEFENDANT:  Uh, no.                                          |
|       | 8  | THE COURT:  Okay.  Have you ever represented                    |
|       | 9  | yourself in the past?                                           |
| 09:33AM | 10 | THE DEFENDANT:  Yes.                                           |
|       | 11 | THE COURT:  Can you tell me when and the                        |
|       | 12 | circumstances?                                                  |
|       | 13 | THE DEFENDANT:  Case against the Federal Government.            |
|       | 14 | It was a -- you want me to go into it in some detail?           |
| 09:33AM | 15 | THE COURT:  Yes, please.                                       |
|       | 16 | THE DEFENDANT:  It was a case of copyright                      |
|       | 17 | infringement.  It was a first impression case.  And as a first  |
|       | 18 | impression case, the law stated that the copyright infringement |
|       | 19 | had to prove sales.                                             |
| 09:33AM | 20 | So to make a long story short, after I went through           |
|       | 21 | this whole trial and after I held the dollar up and put it on   |
|       | 22 | the jury and said the Government never showed any evidence of   |
|       | 23 | any sales or any customer, the judge then instructed the jury   |
|       | 24 | it's irrelevant whether Mr. Gasca had any sales.  If he had the |
| 09:33AM | 25 | wherewithal or the intent, that's enough to prove copyright     |

```
 1    infringement, which it wasn't, Your Honor.
 2              And in a sense, they may also have changed the law
 3    in my case, but -- so that was it.
 4              THE COURT:  So was that a civil case?
 5              THE DEFENDANT:  No.  That was a copyright --
 6    copyright infringement, a federal case that I -- first person
 7    ever charged with camcording a movie in a theater.
 8              THE COURT:  Oh, okay.  So camcording a movie in a
 9    theater.  Okay.  You're bringing back memories of my days on
10    42nd Street.  Okay.  So --
11              THE DEFENDANT:  Yes.
12              THE COURT:  Got it.
13              So you were charged criminally.  And was there a
14    verdict?
15              THE DEFENDANT:  Yes.
16              THE COURT:  And were you convicted or acquitted?
17              THE DEFENDANT:  Convicted.
18              THE COURT:  Okay.  And were you sentenced?  What was
19    the sentence?
20              THE DEFENDANT:  Seven years.  I served six out of
21    seven.
22              THE COURT:  Got it.  Okay.
23              I'm only asking because -- so you understand sort of
24    the pros and cons of representing yourself?
25              THE DEFENDANT:  Yes.
```

09:34AM (lines 5, 10, 15, 20, 25)

**UNITED STATES DISTRICT COURT**

1          THE COURT:  You know, my worry for you is -- but,

2     look, you're a grown man -- is that -- but I have to tell you

3     this.  There's a famous quote, "The lawyer who represents

4     himself has a fool for a client."  You understand?

09:35AM   5          And so, you know, you may be too involved to make

6     the right decisions.  You don't have the legal training.

7     You're going to be required to follow the same rules as a

8     lawyer would be.  You're going to be opposed by the Government.

9     You know, these people go to school, they train for this stuff.

09:35AM   10    You don't.

11         You don't know sort of the complexities of jury

12    selection, what's permissible in opening, what's admissible,

13    what's not admissible, when to make motions, pretrial,

14    posttrial.  And if the Government offers you a plea offer, you

09:35AM   15    may not necessarily have someone that you can bounce these

16    ideas off of.  And if you go to trial, you know, you're going

17    to -- you know, I'll have to look at the Sentencing Guidelines,

18    calculate those guidelines, consider the departures, all of

19    which you may have some experience with but you're not -- you

09:36AM   20    didn't go to school for it.

21         And under the law, you don't have a right to have

22    standby counsel.  We're going to talk about that in a moment.

23    But I just have to let you know, under the law, you don't have

24    a right to standby counsel.

09:36AM   25         So let me ask you in your other case, the copyright

UNITED STATES DISTRICT COURT

1    case, did you have standby counsel or were you all by yourself?

2              THE DEFENDANT:  I was given standby counsel.

3              THE COURT:  Got it.  Okay.

4              THE DEFENDANT:  To be honest, I was given standby

09:36AM    5    counsel more in the attitude of, in case I wasn't able to

6    proceed with defending myself, he would take over.

7              THE COURT:  Right.  Okay.  Right.  I mean, that's

8    the purpose of it, is to make sure that -- it's sort of like a

9    bumper guard in a bowling alley.  Like, you know, if you want

09:36AM    10   to go ahead, you know, you can, but if something goes off the

11   rails, standby counsel can step in.  And, more importantly, you

12   should use standby counsel to bounce ideas off of, like, hey,

13   can I do this?  Can I not?  What's the pros and cons?

14             By virtue of the fact that you're in custody, I

09:37AM    15   don't know what access you have to any legal research, things

16   like that.

17             THE DEFENDANT:  Nothing.

18             THE COURT:  You know, and if you go to trial and

19   you're convicted -- and I'm not saying that you will be.  But

09:37AM    20   if you go to trial and are convicted, you can't -- you know,

21   representing yourself, you can't blame your lawyer.  Right?

22   You can't say ineffective assistance of counsel because you

23   represented yourself.

24             And I'm limited as to what I can and can't do to

09:37AM    25   sort of help you through this.  I mean, you're going to be by

```
 1    yourself.  You understand that?

 2              THE DEFENDANT:  It's do or die.

 3              THE COURT:  Okay.  And at some point during the

 4    trial, if I see things going off the rails, I could say, hey,

 5    if I appoint standby counsel, hey, standby counsel, you're

 6    stepping in.  This is -- this is going south, and I don't like

 7    what I'm seeing.  You understand that?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  Okay.  And you still want to represent

10    yourself?

11              THE DEFENDANT:  Yeah.  I have no choice.

12              THE COURT:  Well, no.  That's not true.  You do have

13    a choice.  I could -- I could appoint the third counsel, but

14    I'm worried.  You're not -- I'm worried that, when you hear

15    something you don't like, you get upset.  And then you're,

16    like, okay, then I'm just going to do it myself.

17              And my worry is that, you know, I'm not sure how

18    much better off you're going to be the third time around by

19    yourself, given the issues that you raised.  And I'm not -- I

20    don't want to talk about them in public now.  But given the

21    issues you raised, I'm not sure representing yourself fixes

22    those.

23              But -- so you have a choice.  I could appoint

24    another lawyer to represent you, but my worry is that you're

25    going to say, oh, this lawyer didn't do X, Y, and Z right then
```

09:37AM (line 5)
09:37AM (line 10)
09:38AM (line 15)
09:38AM (line 20)
09:38AM (line 25)

**UNITED STATES DISTRICT COURT**

and there, and he or she may have a different strategy or a different thought process relative to this.

THE DEFENDANT:  Well, when I had my attorney the first time, I didn't have any of these issues.  I was told what the situation was going to be, what he could do, what he couldn't do.  I was willing to wait whatever time was necessary.

The only reason I represented myself the first time is because, when I was let out in custody, you know, and I absconded, they said that lawyer couldn't be my lawyer no more.  So in coming back, I was forced with waiting another six months to go to trial or representing myself.  So I chose to represent myself.

If a lawyer simply communicates with me, reasonable, something reasonable, I have no problem with that, you know.  But if he tells me one thing and then four months later tells me, oh, entirely something different, not on one issue but on all of the issues --

THE COURT:  Okay.  I get it.  That was then.

But my point is you do have a choice.  I could hire a third -- I could bring in someone else if that's what you want.

Look, you're a grown man.  If you want to represent yourself, that's fine.  But when you say "I don't have a choice," that's not accurate.  I could bring in a third lawyer,

1    but, again, just cards on the table, there's no way on this

2    planet that, if I appoint a third lawyer, they're going to

3    trial on -- what's your trial date?  I think it's June 13th or

4    14th.  Is that right, Mr. --

09:40AM    5                MR. REIDY:  14th, Your Honor.

6                THE COURT:  June 14th.  There's no way they're going

7    to trial.

8                And I'm also going to be straight with you, just in

9    the interest of candor, I start a civil trial on June 13th.  So

09:40AM    10    I need to finish that trial, and then your trial will be right

11    after.  But there's no way -- I'm not sure you're going to be

12    ready on June 14th, even if you represent yourself, and I'm

13    99.9 percent certain that, if I bring you another lawyer, that

14    lawyer is going to be ready on June 14th, particularly in light

09:40AM    15    of the issues that you're telling me -- that you told me

16    outside the presence of the prosecution.

17                But -- and I'm saying all this because I just want

18    to be fair and clear, you do have a choice.  But, you know --

19    look, I mean, I don't know how old you are, but, you know, in

09:40AM    20    my day, coming up as a kid, there was an old TV ad about

21    Burger King where they say, "You can have it your way."  You

22    can't have it your way all the time right now because lawyers

23    have got to get up to speed.

24                And I understand your issue is communication.  And

09:41AM    25    to the extent I bring in another lawyer, you should be upfront

1   and say, look, my issues are when lawyers are communicating

2   with me -- or not communicating with me, I should say, they

3   tell me one thing and do another.  Just be straight with me.

4          You know, so I'm putting a lot out there, but it's

09:41AM  5   really -- to answer your question, you do have a choice.  I can

6   bring in another lawyer or you can represent yourself.  So I

7   don't want to hear you say I don't have a choice because you

8   do.

9          THE DEFENDANT:  If I take another attorney, will I

09:41AM  10   then have the option to, if we can't come to some agreement, go

11   forward myself and he be standby?

12          THE COURT:  Look, I'm not wild about it, but I will

13   say -- if it -- if there is really a conflict, okay -- and I'm

14   going to be straight with you, Mr. Gasca.  I've been kind.

09:41AM  15   Okay?  This stuff with Mr. Juarez, there's some judges that

16   will be like, you know what?  Y'all can figure that out.  He's

17   still your lawyer.

18          I've been gracious with you two times.  Okay?  I'm

19   trying to work with you -- but that's why I was kind of hot in

09:42AM  20   the beginning.  I'm like, look, I think there's a little bit

21   of, like, you want things your way, you're not getting them, so

22   you're, like, oh, screw it, I'm just going to go pro se.

23          That's not a wise move, particularly when, you know,

24   the -- well, I know Mr. Juarez and the lawyer that's on deck

09:42AM  25   is -- he's good.  But he may tell you some things you don't

```
         1    want to hear.
         2            So -- and this is serious, man.  I mean, Mr. Gasca,
         3    this is serious.  I know you've got your issues.  And, again, I
         4    don't want to get into what you told me because the prosecutor
09:42AM  5    is here.  There's some issues that need to be looked into.  I
         6    don't know how it's going to play out.  Your lawyer may look
         7    into those issues and be like, hey, Mr. Gasca, that ain't gonna
         8    work.  I don't know.  But my point is you've got to be willing
         9    to -- you want communication, the communication has to go both
09:43AM 10    ways.  That's all I'm saying.
        11            So you tell me what you want to do.
        12            THE DEFENDANT:  Yeah.  I'll take that gracious
        13    offer.
        14            THE COURT:  Which is --
09:43AM 15            THE DEFENDANT:  And -- to -- to get a third
        16    appointed attorney.
        17            THE COURT:  Okay.  You realize, sir -- again, the
        18    likelihood of you having a trial on June 14th is slim and none.
        19    Right?
09:43AM 20            THE DEFENDANT:  What is the date that we're looking
        21    at after your civil trial?
        22            THE COURT:  Oh, I don't -- I mean, look, again, I'm
        23    just being honest with you.  We've been in COVID; right?  I've
        24    been in trial for the last six weeks because everybody like
09:43AM 25    you, no disrespect to you, there are plenty of Johnny Gascas
```

**UNITED STATES DISTRICT COURT**

that have been sitting in custody.

I had a guy literally on a Hobbs Act robbery, two years in custody, not guilty.  Waited two years.  Another guy, leader of the East Coast Crips, three-week trial, waited two-and-a-half years, convicted on all counts.  I got this civil trial.  You know, I've got trials lined up throughout the summer.  I know your case is -- your case is a 21, so it's old but not as old.  It's a priority.  I know -- I know you want to get this party -- get this going.  But I can't tell you right now because I don't know what your lawyer's schedule is.  You say there's stuff you want your lawyer to look into.  I don't know.

But I do know this much, I don't think Mr. Juarez -- because I know him, I've known him a long time.  And the lawyer that's on deck, they're not going to dillydally just because they don't care.  They've got other cases, they've got to look at your issues, they've got to marinade on your issues and figure out what is the best course of action in the case.

So I'm saying all this to say, you know, you've got to -- and, look, I'm not sitting in your shoes and I don't pretend to know what it's like to be in your shoes.  But I do know this, I used to do this work representing folks and I used to prosecute folks.  I understand the challenges.

These things, wrong or right, do take time.  Like I told you, there's a guy here literally two weeks ago in custody

1    for two years.  Like you, wanted detention hearings, wants all

2    this stuff, and he's, like, this ain't right.  I'm, like,

3    look -- you know, I don't get into the details -- but I'm,

4    like, I'm getting your trial as soon as I can.

09:45AM    5            The first window that we had, he had his trial.  I

6    make that commitment to you, but I'm not going to sit here and

7    tell you we're going to have a trial on this date and then you

8    come back to me and say, "Oh, Judge, you told me it was going

9    to be on this date, so I don't trust you either."

09:45AM   10            So again, if you want, I'm going to appoint another

11    lawyer, but you've got to -- you've got to work with them.

12            THE DEFENDANT:  Yes, Your Honor.

13            I just -- I just take exception to one thing.  You

14    know, understanding my situation and all of those circumstances

09:45AM   15    that you've graciously taken the time to explain to me, I

16    understand, I'm 52 years old, I'm not a fool.  But telling me

17    one thing and then telling me something completely opposite as

18    the first attorney did right when we were about to go to trial

19    and not on one issue but on all my issues, on all my main --

09:46AM   20            THE COURT:  And all I'm saying is -- I guess what I

21    would ask is is that, if that happens again, which I hope it

22    doesn't, have a conversation with them about it and don't just

23    say screw it, I'm out.  Because maybe there was a

24    misunderstanding.  I don't know.  I wasn't in those

09:46AM   25    conversations.

**UNITED STATES DISTRICT COURT**

1           And I'm not here suggesting you're not telling me

2      the truth and I'm not here saying that the lawyers aren't

3      telling the truth.  But I know how tense these situations are,

4      and I know -- look, I know all too well just so -- I keep

09:46AM  5      coming back to this trial I just had.  There was a lot of

6      tension leading up to the trial because he wanted out, he

7      wanted his lawyer to file a motion, you know, to release him

8      from detention.  His lawyer said, "I'm not doing that.  They

9      caught you on the run.  The judge ain't gonna go for it."

09:46AM  10           There's a lot of tension back and forth.  They went

11     to trial, Lord knows they were hugging at the end because, you

12     know, they worked through their issues.

13           And all I'm saying is that, if there are conflicts,

14     I'm asking you, before you pull the trigger and say, hey, I

09:47AM  15     want out, do everything you can to try to get some clarity on

16     the issue beforehand.  That's all I'm saying.

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  So, again, I come back, what do you want

19     to do?

09:47AM  20           THE DEFENDANT:  I'll take another attorney.

21           THE COURT:  Okay.  So I'm going to appoint -- let me

22     just see.  I think it's -- and if it's the person I'm thinking

23     of -- hold on -- okay.  Yeah, so both -- actually -- yeah,

24     everyone is good on this list.

09:47AM  25           I'm going to appoint Michael Friedman as your

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 09:48AM | 5 |

        lawyer.  I'm going to ask Mr. Juarez to communicate with
        Mr. Friedman.  And then what I will do, just as a sign of --
        not good faith, but I'm going to bring this case back in two
        weeks.  We'll do it via Zoom.

                I want to make sure there's been a handoff with the
        new lawyer, see if you guys have had a chance to communicate or
        not and, if not, let's figure out why because, you know, you're
        out in San Bernardino.  Maybe he doesn't have the Zoom hookup,
        you know, I don't know.  Let's figure all that stuff out.  And
        then we'll figure out, okay, what are we doing here?  How does
        that sound, sir?

                THE DEFENDANT:  Very gracious.  Thank you,
        Your Honor.

                THE COURT:  So we'll appoint Michael Friedman as the
        lawyer in this case.  We'll continue this.  We'll have a status
        conference.

                Let me see if I can get a date in two weeks.  It may
        be on a Friday.  I'm -- I did this on a different day just
        because I knew this was an issue.

                So -- okay.  The next -- yeah, okay.  So June 10th
        at 10:00 a.m.  That's a Friday, 10:00 a.m. because, you know,
        there are different time slots for where you are.  You're out
        in San Bernardino; right?

                THE DEFENDANT:  I'm in McFarlan.

                THE COURT:  McFarlan.

        UNITED STATES DISTRICT COURT

```
 1              THE DEFENDANT:  It's by Bakersfield.

 2              THE COURT:  Okay.  That's -- okay.  Yeah.  So you're

 3  out there.  So I think the time slots are, like, 8:00-10:00,

 4  1:00-3:00.  So we're going to do it at 10:00 a.m., June 10th,

 5  for a status conference.  Okay?

 6              THE DEFENDANT:  Yes, Your Honor.

 7              THE COURT:  Do you have any other questions, sir?

 8              THE DEFENDANT:  No, Your Honor.

 9              THE COURT:  Okay.  So June 10th -- I'm just writing

10  this down -- 10:00 a.m., Michael Friedman appointed.

11              Okay.  I'm putting down "your long conversation with

12  Mr. Gasca," just so I -- because I'm old, so I need to remember

13  this stuff.

14              All right.  So then I'll see you all on June 10th.

15  Stay safe, everyone.  Thank you for the time.  And my apologies

16  for being late this morning.

17              THE DEFENDANT:  Thank you, Your Honor.

18              MR. REIDY:  Thank you, Your Honor.

19              THE COURTROOM DEPUTY:  All rise.

20              (Proceedings concluded at 9:50 a.m.)

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3     COUNTY OF LOS ANGELES    )
                               )
4     STATE OF CALIFORNIA      )

5

6              I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7     REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8     CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9     TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10    IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11    REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12    THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17              DATED THIS 1ST DAY OF MARCH, 2024.

18

19

20              /S/ MYRA L. PONCE
      _____
21         MYRA L. PONCE, CSR NO. 11544, CRR, RDR
              FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**