UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE ANDRE BIROTTE, JR., U.S. DISTRICT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. |
| | ) | |
| vs. | ) | CR 21-00351-AB |
| | ) | |
| JOHNNY RAY GASCA, | ) | |
| | ) | PAGES 1 TO 26 |
| DEFENDANT. | ) | |
| | ) | |

REPORTER'S TRANSCRIPT OF
STATUS CONFERENCE
TUESDAY, MAY 23, 2023
2:10 P.M.
LOS ANGELES, CALIFORNIA

MIRANDA ALGORRI, CSR 12743, RPR, CRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, SUITE 4455
LOS ANGELES, CALIFORNIA 90012
MIRANDAALGORRI@GMAIL.COM

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4          MARTIN ESTRADA
           UNITED STATES ATTORNEY
5          BY:  KEVIN REIDY
           BY:  KATHY YU
6          Assistant United States Attorneys
           United States Courthouse
7          312 North Spring Street
           Los Angeles, California 90012
8

9    **FOR THE DEFENDANT:**

10         JOHNNY RAY GASCA
           In Propria Persona
11

12         (ADVISORY COUNSEL)
           LAW OFFICES OF MARK CHAMBERS
13         BY:  MARK CHAMBERS
           14241 East Firestone Boulevard
14         Suite 400
           La Mirada, California 90638
15

16

17

18

19

20

21

22

23

24

25

1              **LOS ANGELES, CALIFORNIA; TUESDAY, MAY 23, 2023**

2                          **2:10 P.M.**

3                           **---**

4

5              THE CLERK:  Calling criminal case 21-351,

6    United States of America versus Johnny Ray Gasca.

7              Counsel, please state your appearances.

8              MR. REIDY:  Good morning, Your Honor.

9    Kevin Reidy and Kathy Yu on behalf of the United States.

10             THE COURT:  Good afternoon.

11             MR. CHAMBERS:  Good afternoon.  Mark Chambers,

12   advisory counsel for Mr. Gasca who is present before the Court.

13             THE COURT:  Good afternoon to you all as well.

14             So I asked, I think -- I received a letter from

15   Mr. Gasca, and then in light of the letter, I asked the

16   Government to please provide at today's hearing a copy of the

17   disc that had been given to Mr. Gasca.  So this afternoon the

18   Government gave me two envelopes, one -- just, for the record,

19   7A-LA-34684764SUID251575.  One is a copy of SD card image, and

20   the other one is copy of phone and SIM extractions.  They were

21   in evidence tape, and I removed the tapes to access the drives.

22             I wasn't successful in getting -- well, I should

23   say, the SD card, I wasn't able to get anything from it off of

24   our computer.  And then the thumb drive that I think has the

25   SIM extractions, the only thing that I could get were these

1    one-page documents that are entitled "SIM/USIM examination

2    report properties."  So that's all I could get.  I couldn't

3    read anything.  So I'm trying to get a sense of what -- you

4    know, maybe you can help explain that.

5                    And then I called over to the legal counsel over

6    at MDC to try to get a sense of what's available over at MDC as

7    far as programs to review and read stuff, and he just gave me a

8    quick list, you know, they've got QuickView+, For The Record,

9    Player.  There's a VLC player, Adobe Reader, and Windows Media

10   Player.  Apparently the QuickView+ is capable of reading over

11   300 file formats, and the Windows Media Player should be able

12   to read most audio or video files.

13                   What I'm struggling with is I just wasn't able to

14   look at anything off of these two drives, and I'm trying to get

15   a sense of why.

16                   MR. REIDY:  Your Honor, I apologize.  I thought I

17   explained this at the last hearing.  The two drives that we

18   provided to the defendant at the last status hearing were the

19   raw data that was collected from his phone and the SD card.

20   Like we have -- we have discussed this with Mr. Chambers, and I

21   thought I had conveyed this in court.  That information is not

22   readable without some other software.

23                   THE COURT:  Right.  The Cellebrite software.

24                   MR. REIDY:  Or some other software.

25                   THE COURT:  What software is that?

1              MR. REIDY:  Your Honor, I think the reason why

2       Mr. Chambers is standing up right now is that that's -- the

3       reason why I think we, through one stage of this, why we had

4       this multiple flash drive exchange is that that software,

5       Cellebrite or some other comparative software, is too big to

6       open at MDC.  So the reason why we provided three flash drives

7       ago to Mr. Chambers, so that he could provide the raw data from

8       the phone to an expert of his choosing that would basically

9       take the data from the phone and render it so it would be

10      accessible to the defendant without the large software like

11      Cellebrite or something similar that he can't open at MDC.

12              THE COURT:  Okay.  Is that the program that just

13      had all the pages?  Or did that happen?

14              MR. REIDY:  It did happen, Your Honor.  I don't

15      want to speak for Mr. Chambers, but he did also provide us with

16      a copy of what he provided to the defendant which was the

17      contents of his phone that was processed by Mr. Chambers's

18      expert, and then basically it has -- it has a number of

19      subfolders that sort of sets forth the contents of the phone

20      based on --

21              THE COURT:  Would that include audio/video notes?

22              MR. REIDY:  It does, Your Honor.  And it included

23      notes -- actually, at Ms. Yu's suggestion, I obtained the notes

24      from that hard drive.

25              THE COURT:  All of the notes?

```
1              MR. REIDY:  All of the notes that were taken from

2    the phone.

3              THE COURT:  That doesn't look like a lot of

4    pages.

5              MR. REIDY:  It's not, Your Honor.  The data is

6    only -- I think it's between -- it's between 2021, and it goes

7    back as far as 2016 or 2018.  So that's well outside the period

8    of the data that the Government collected for its purposes.

9              THE COURT:  Okay.  What about video/audio

10   messages?  Is that all presumably on something?

11             MR. REIDY:  Yes, Your Honor.  It's on the drive

12   that Mr. Chambers provided to the defendant I think in early

13   May.

14             THE COURT:  Mr. Chambers, you're standing up.  Go

15   ahead.

16             MR. CHAMBERS:  Yes, Your Honor.  We received the

17   raw format that the Court has in front of it.

18             THE COURT:  You can't -- that no one can access.

19             MR. CHAMBERS:  That's why I gave it to the

20   expert, Your Honor.

21             THE COURT:  Okay.

22             MR. CHAMBERS:  To create a viewable, searchable

23   drive.

24             THE COURT:  Okay.

25             MR. CHAMBERS:  And I gave a copy to the
```

1    Government last time.  I have given a copy to Mr. Gasca.

2              THE COURT:  Do you have an extra copy now?

3              MR. CHAMBERS:  I have an extra copy for Mr. Gasca

4    today if he says he didn't get that one that I sent to him.

5              THE COURT:  Okay.

6              MR. CHAMBERS:  But this is viewable.  It's

7    searchable.  I have got -- I actually pulled the documents --

8    the six additional documents that Mr. Gasca wants in evidence,

9    I pulled them off this drive to have them available as --

10             THE COURT:  Okay.

11             MR. CHAMBERS:  -- as exhibits at the trial.

12             THE COURT:  Is that the only copy that you have

13   right now?  I mean in your physical possession.  Because I'd

14   like to take a look at it, if possible, to go back and see if I

15   can access it.

16             MR. REIDY:  I have that copy too, Your Honor, if

17   you prefer.

18             THE COURT:  Okay.

19             MR. CHAMBERS:  They're both the same.

20             THE COURT:  So can I get a copy and let me go

21   back and look?

22             Now, Mr. Gasca, did you receive that drive that

23   Mr. Chambers is talking about?

24             THE DEFENDANT:  No.  And at MDC I inquired about

25   it.  I asked for a tracking number.  I gave it to them.

```
 1                    THE COURT:  So you haven't received it.  Let me
 2     look at it and see if there is something we can read.  If
 3     that's the case, you can get it right now.
 4                    THE DEFENDANT:  Can you tell me what size of the
 5     gigabytes it is?
 6                    THE COURT:  Let me look at it first.
 7                    THE DEFENDANT:  Look at it.
 8                    THE COURT:  Mr. Chambers, why don't you give me
 9     your copy or whatever copy you feel comfortable with.  I'm
10     going to give the Government back these raw -- they're of no
11     use to me.
12                    MR. CHAMBERS:  Your Honor, I talked to the
13     expert.  He's available to -- by phone this afternoon if
14     Your Honor has any questions.  I would suggest that the
15     Court -- there are several different searchable formats on the
16     drive for the material.  I would suggest that the Court go to
17     the one that has a pdf on it and use that version of the
18     material.
19                    THE COURT:  Pdf version?
20                    MR. CHAMBERS:  Yes.
21                    THE COURT:  Mr. Gasca, just in case it's an
22     issue, I'm not going in there to just look and see.  I'm not
23     going to probe and see what's in there.
24                    THE DEFENDANT:  I know you're not.
25                    THE COURT:  I just want to make sure it's
```

1  readable so that you can have it and you can look and try to

2  get what you want.

3              THE DEFENDANT:  I appreciate that.  I don't know

4  what the size of this gigabyte is, but with the most respect to

5  the Court, not to continue to make this complicated, it's very,

6  very simple.  I have an SD card that's on the phone.

7              THE COURT:  I understand.  You have told me that

8  before.  I want to see what's on here first.  It may or may not

9  be what you're looking for, but at least I can look at it.  I'm

10  going to cut this open.  Okay.

11             MR. CHAMBERS:  It's already open, Your Honor.

12             THE COURT:  Oh, it is.

13             MR. CHAMBERS:  You can peel it back.

14             THE COURT:  All right.  I'm going to go back in

15  chambers and take a look at it.  I will be back hopefully soon.

16             THE CLERK:  All rise.

17        (A recess was taken at 2:18 p.m.)

18             THE COURT:  Okay.  So I have had a chance --

19  Mr. Gasca is now present.

20             I looked at this disc, this SAN disc that has a

21  label "Johnny Ray Gasca, No. 3, cell phone 25994-112,

22  CR 21-351-AB."

23             So I have looked at it on our computer.  I looked

24  at the file.  Mr. Chambers referenced that as to pdf using a

25  VLC media, the pdf, I was able to access some videos.  Some

1    videos I was not able to.  When I say some videos that I was

2    not able to, deleted in the file name.  So when you clicked on

3    it, it didn't allow you to access it.  There were some audio

4    messages.  Obviously I didn't go through the entire disc.  It

5    does appear to be in a format that lists audio, video.

6           I also glanced at messages, and it shows what

7    appears to be like messages sent to people.  Another file I

8    looked at, it had Instagram, Facebook, and it showed some

9    messages, I believe.  I may be off on that.  The amount of gigs

10   that were occupied on this disc is about 168, if my memory

11   serves me correctly.

12          So this appears to be something that can be

13   looked at.  I was able to see files.

14          Mr. Gasca, I'm going to give you this disc.  It

15   worked on our computer here.  I used, like I said, the VLC

16   player to try to look at a video, and it did show a video.  One

17   example that just comes to mind is -- I don't know if it's a

18   trailer or a mini movie called "The Gathering."  There was a

19   video like about four minutes, and there were some other

20   videos.  Some are just like advertisements and things of that

21   nature.  So it does appear to be in that format.  So I'm going

22   to give this to you, and then you will have a chance to look at

23   it.

24          What I will do, perhaps against my better

25   judgment, I will have everybody come back next month, the 30th

1    or next Tuesday to just see where we're at and see if we're

2    going to go to trial on the 5th or not.  So I'm going to give

3    this to you today.

4            Yes?

5            THE DEFENDANT:  So just briefly, if I can share

6    something with Your Honor, I have done some investigating, so I

7    know what the Cellebrite program is.  It's a program that when

8    you extract from a cell phone, it helps the FBI extract

9    detailed data that a normal person wouldn't be able to do.  So,

10   for example, it will detect e-mails and what your password is

11   on that e-mail.  I wouldn't be able to do that.  It detects

12   pings on the phone and extra data like that that would normally

13   be accessible when you copy off a phone.

14           Now, the reason the file is taking a long time to

15   open is not because it's a big file or not because Cellebrite

16   uses -- the newest version of Cellebrite only uses four gigs.

17           THE COURT:  I'm not sure I'm following.  What's

18   the issue?

19           THE DEFENDANT:  So when you put the programs in

20   and the reason it takes so long to open is because they're

21   zipped.  They're compressed.

22           THE COURT:  Sir, I read your letter.  I have a

23   pdf file.  It didn't take long to load up.

24           THE DEFENDANT:  I have --

25           THE COURT:  Hold on a minute.  Listen to me.

1          THE DEFENDANT:  Yes.

2          THE COURT:  I don't believe the disc is using

3   Cellebrite to provide the data to you.

4          THE DEFENDANT:  No.

5          THE COURT:  You should be able to put this in the

6   computer at MDC and be able to look at what the Government has

7   represented, and I will confirm again.  They indicate that

8   what's on this disc should represent all the information and

9   data that was taken from your phone.  So you should have access

10  to it.  Like I said, there are some files you click on it, it

11  says it has been deleted.  I'm not getting into who, what.  But

12  this represents it.

13         So the whole issue of Cellebrite doesn't mean

14  anything now, and the whole issue of zipping files is not

15  relevant because this purports to have a pdf format where you

16  can click on to it and it will link you onto the audio or

17  video.  So the Cellebrite thing doesn't matter, and I'm not

18  sure why the zip files or non zip files that you mention in

19  your letter are relevant to this discussion.

20         THE DEFENDANT:  Okay.  So I have no doubt that

21  what you said is on there.  I don't know that that's --

22         THE COURT:  I don't know either.

23         THE DEFENDANT:  In an abundance of caution, what

24  I'm asking is, when I have asked for the evidence from the

25  Government, Mr. Reidy said to you that he gave Mr. Chambers the

1  information so that he can then take it to an investigator and

2  have it converted.  That is not how it was done.  He gave him

3  the stuff that was not readable.  Mr. Chambers gave to the FBI

4  an empty drive so that he can make the stuff readable to us.

5  He then took two weeks and gave him the same stuff again that

6  Your Honor received this morning, couldn't open.

7            Then he then, on his own initiative, took and had

8  an investigator go and first give me a 28 gig version, a 25 gig

9  version and said, that's everything.  Then on the second one he

10  did it again and said, well, there's a deeper drive now, and I

11  have got more gigs and that's what Your Honor has, and I have

12  no doubt that is searchable.

13            What I'm proposing is, so there is no time lost

14  and so that I can go to trial in two weeks -- I have no reason

15  to delay -- it's very simple.  They can copy the SD card -- I

16  don't need the whole phone.  Most of that --

17            THE COURT:  You can't --

18            THE DEFENDANT:  Can I please just finish?

19            The SD card as is, it requires no Cellebrite.  It

20  requires no zipping.  What's taking long to open the file is

21  that they're zipped.  When you zip a file, you compress it.

22  And then when you open it, for example, just quickly, I have

23  opened up a 7 gig movie.  It takes about 15 minutes to open up

24  7 gigs.  That's what's causing the problem there.  You have to

25  open multiple --

1              THE COURT:  Let me stop you there, okay, because

2    I got the SD card.

3              THE DEFENDANT:  Right.

4              THE COURT:  I tried to open it on my computer.

5    It wouldn't allow me to do it.

6              THE DEFENDANT:  Because it's zipped.  What I'm

7    saying is this --

8              THE COURT:  I'm not sure why you understand that

9    zipping a file would make it unable to be opened.  I couldn't

10   get anything out of it.  I have seen zipped files where they

11   show the zipper icon.

12             THE DEFENDANT:  Yes.

13             THE COURT:  We couldn't open it.  I'm not sure I

14   understand your point about, because it's zipped, you can't

15   read it.

16             THE DEFENDANT:  I don't know about those files

17   because I wasn't able to access them either.  But the ones they

18   gave us the first time when we tried to open it, that's what

19   was taking a long time to open it.  I don't want to confuse the

20   issue.  Here's the issue.  I bought the SD card that goes in my

21   phone.  It was 125 gigs, and it was blank when I bought it.

22   And I put it in my phone, and I loaded the data on there so I

23   know what is on there.  And I selected what programs should

24   record the data to there so that I would leave an empty space

25   on my phone.  The reason being is that the phone requires --

1   you record certain video directly to the phone without being

2   able to convert it to the SD card if they're large files.  So I

3   always left a certain amount of gig space on my phone and a

4   certain amount of gig space on my SD drive.  So I know exactly

5   what's on both of them.

6          So I'm going to make it very simple, if the Court

7   would agree, all I need is a copy of my SD card.  It doesn't

8   have to be anything at all.  When they give it to me, I should

9   be able to read it the same way I read it in my phone.  That's

10  the data that's on there.  That's the data that I need.  It's

11  the programs I have selected to copy there.  They have notes,

12  they have memos, all those things.  I selected them so they

13  would be copied on the SD card.  That's why I bought an extra

14  SD card.

15          THE COURT:  I heard you.  I heard you.  I heard

16  you.

17          Mr. Chambers.

18          MR. CHAMBERS:  The SD card is on the drive that

19  the Court has in front of it.  Both of those were combined onto

20  that.  I explored that with the expert.  He combined them both

21  onto the drive that the Court has in front of it.

22          THE DEFENDANT:  Now, Mr. Chambers has no way of

23  knowing what's on the SD card.  So he doesn't know that what

24  the expert gave him is anything.

25          THE COURT:  He didn't say that.  He just said the

1    expert converted it.  Nobody knows what's on the SD card other

2    than you.

3                    THE DEFENDANT:  Right.

4                    THE COURT:  And they have indicated that it's on

5    this disc.  Why don't you take the disc and look at it before

6    you start going off.  Okay?

7                    THE DEFENDANT:  I appreciate that, Your Honor.

8    What I say is -- because we're doing the same thing again.

9    When they first gave the one gig -- you said, wait until you

10   check it and come back.  I came back, and I argued that it is

11   only 1 gig.  They were representing at the time that it was

12   everything.  You said to me, look, you have your issue.  They

13   said they gave you everything.  You said it's not.  What do you

14   want me to do?  Just take it up to the appellate court.  Now

15   we're going back and forth.  I don't mean to be belligerent.

16                    THE COURT:  So you want to do it again?

17                    THE DEFENDANT:  No.  What I'm saying is this.

18   Then the second time after he went to his expert, you know what

19   I mean, I got 28 gigs.  And then you said, did you check it?  I

20   said, yes, I'm going through it, Your Honor.  I've gotten some

21   stuff, but it's not what I'm looking for.

22                    So just not to waste time -- not to waste any

23   time, I'm just asking for them to simply copy the SD card.

24                    THE COURT:  They have indicated that's what's on

25   this disc.

 1              THE DEFENDANT:  They have given us raw data that

 2     was then converted by an expert, and now it comes there.

 3              THE COURT:  I'm going to tell you this, sir.  I

 4     don't believe you can read an SD card at MDC.

 5              THE DEFENDANT:  May I speak?  The SD card, the

 6     files that are selected on there and the programs that I

 7     selected, you can read them because they're media files and

 8     they're audio files.  So they can be read.

 9              THE COURT:  You're not listening to me.  If I

10     give you -- let's say I do what you're saying, which I'm not

11     inclined to do because at least the Government -- they

12     indicated that what's on the SD card has been converted and

13     placed on here.  If I gave you a physical SD card, where would

14     you play it?

15              THE DEFENDANT:  No.  I'm saying they can convert

16     the SD card to a thumb drive.

17              THE COURT:  That's what I believe is on this

18     drive.

19              THE DEFENDANT:  They have given raw data to him.

20     He's given it to an expert that twice has come to us with

21     different information.

22              THE COURT:  So you disagree with what's on here,

23     but all I can do is tell you this is what they're telling me.

24     Now, if you say, look -- if you say you look at it and you say

25     this is not the case, I suppose we can bring it up.  But,

1   again, they have indicated on -- today that what's on here

2   represents what was on the SD card.  Okay.  You say that you

3   don't -- you believe it's been converted to get on here and

4   that somehow messed up what's on the SD card.  They're saying

5   this is a copy.

6          THE DEFENDANT:  I can't say, Your Honor, I have

7   not been given all the evidence unless I am given it from them.

8   When it goes in circulation with someone else, then I'm

9   disputing what was done with the drive.  I appreciate what

10  Your Honor is saying that I can bring it up later.  What I'm

11  saying is that we did this a month ago, and you said, if it's

12  not on there, let me know.  And I appreciate that Your Honor

13  has dealt with this issue so diligently.

14          What I'm asking now is something very, very

15  simple that will circumvent all of this.  The Government has

16  the SD card.  Copy the SD card to a thumb drive, not raw data,

17  not a zipped file, not Cellebrite.  Just a simple copy of the

18  SD drive {sic}.  On a thumb drive, I can play it on anything.

19  Any computer, the most slowest computer will play it.

20          THE COURT:  Mr. Chambers?

21          MR. CHAMBERS:  Yes, Your Honor.  As we were

22  talking, I just opened up the raw material I got from the

23  Government that I gave to the expert for the third production

24  which the Court has in front of it.  Physically there is an SD

25  card in here which is consistent with what the expert told me

1    that the card and the thumb drive contained in Exhibit 3 were

2    combined onto the drive that the Court has in front of it right

3    now.  So it's already been done.  What he's asking for to be

4    done has already been done.  It's on the drive.

5                 THE DEFENDANT:  No, it hasn't been done.

6                 Now, once again, Your Honor, in plain English --

7    I don't know where Mr. Chambers is lost.  You know, the

8    Government has the SD card.  I'm not even asking for the phone.

9    I will let that go.  I have someone to testify to that.  On the

10   card {sic} is an SD card.  It takes less than ten minutes to

11   copy it.  On the slowest computer, it would take a half an hour

12   to copy it.  In an abundance of caution, when we come back next

13   Monday, they should be able to say, hey, we copied the SD card.

14                THE COURT:  Mr. Reidy, just tell me if I'm

15   missing something here.  The SD card was given to the defense.

16                MR. REIDY:  Yes.

17                THE COURT:  And the SD card, the copy of it

18   represents what was pulled from Mr. Gasca's phone.

19                MR. REIDY:  The SD card represents what was

20   pulled from the SD card.  The flash drive represents what was

21   pulled from his phone.

22                THE COURT:  The SD card that was in Mr. Gasca's

23   phone?

24                MR. REIDY:  Yes, Your Honor.

25                THE COURT:  Mr. Chambers, you're telling me that

1    you gave that SD card and the flash drive to an expert.

2                    MR. CHAMBERS:  Yes.

3                    THE COURT:  And then they copied it and -- well,

4    they copied it and converted it into this pdf format?

5                    MR. CHAMBERS:  That you have in front of you.

6    It's on the drive that you have in front of you.

7                    THE COURT:  In addition, there are other files on

8    this thumb drive.

9                    MR. CHAMBERS:  Yeah.

10                   THE COURT:  Do those files represent -- what do

11   those files represent, if you know?  For example -- I don't

12   think I'm making myself clear.

13                   On the pdf there are tabs where it says audio,

14   video, notes, but there's also folders that say the same or

15   similar things that are not in pdf versions.  Those folders, do

16   they represent what is put into the pdf format?

17                   MR. CHAMBERS:  Those folders are where the pdf

18   format goes to get the things to show you.  If you click on

19   something, then they are stored in the folder, and the pdf

20   format pulls the document or the item or the recording,

21   whatever, out of those folders and presents it to you.  Those

22   are storage.  Those are not for utilization.

23                   THE COURT:  If you could tell me, Mr. Gasca is

24   saying just copy the SD files and I should be able to access

25   them.

1          MR. CHAMBERS:  Again, Your Honor, it's done.

2     It's on the drive that you have.  It's done.  An expert in cell

3     phones did it.

4          THE COURT:  Right.  But he's saying an expert is

5     not necessary.  He's saying that all you have to do is just, I

6     guess, like, drag it over, and then he should be able to look

7     or listen or access the very same thing.

8          THE DEFENDANT:  Right.

9          MR. CHAMBERS:  I'm not sure what the Government

10    provided you today, Your Honor, but if they provided you an

11    SD card and that's what the Court looked at earlier, that would

12    be the same outcome of Mr. Gasca looking at an SD card at MDC.

13    It would be non-viewable.

14          THE DEFENDANT:  So I have a question.  That

15    SD card that he received, I don't know what format it's in.

16    You know what I mean?  But I know that if I took that SD card

17    and I put it in the phone, it wouldn't work.  The phone doesn't

18    make it magically viewable.  The SD card I have taken myself

19    hundreds of times -- I'm not even exaggerating, more than

20    300 times.  When I have taken it off and put it right into my

21    computer, and I read it right there in the computer using no

22    special programs or anything.

23          So all I'm asking is that SD card to be copied

24    over.  That's all I'm asking.  Not no programs to be done, not

25    to go through no experts or anything like that.  I asked for

1   that five months ago to be given to me over the phone, and a

2   month was wasted here.  To speak to the issue, all I'm asking,

3   Your Honor, so that we don't lose any time -- I appreciate that

4   you're willing for me to bring it up next Monday.  But we can

5   save time, and I won't have to risk any delay of trial or

6   anything is I'm simply asking the Government to copy me the

7   SD card they have in the phone.  Just make me a copy of that.

8   They don't have to use any raw data.  They don't have to use

9   any programs.  Just copy.  They know what I'm talking about.

10  You know what I mean?

11          THE COURT:  So I'm going to give you this disc.

12  You're going to look at it.  We will be back next Tuesday at

13  1:30 p.m.  What I'm going to ask the Government to look into

14  this issue about he claims that all you can do is copy it and

15  drag the files.  I'm going to ask you to inquire of the folks

16  on your side to see if that can be done.

17          MR. REIDY:  Yes, Your Honor.  I don't think it

18  can be done.  We're talking about the data that we collected

19  from the phone.  I think that that collection process is

20  different from what the --

21          THE COURT:  I know.  But what he's saying is that

22  you have an SD card that was in Mr. Gasca's phone that contains

23  a bunch of information.  He's saying -- I don't know if it's

24  true or not.  This is not my lane -- that you could open the

25  files of that SD card and it will contain notes, audio, video,

1   et cetera, and you can just copy them onto another SD card and

2   if you provide -- and you should be able to access it just like

3   he accessed it on the phone.

4           I have questions about it only because my limited

5   understanding is what's on -- if it's audio or media files,

6   maybe so.  But, like, I'm wondering if it needs to access

7   programs off the phone to produce them on the phone.  But I'm

8   asking you to inquire about that.

9           MR. REIDY:  Yes, Your Honor.

10          THE COURT:  Okay.  All right.  So I'm going to

11  give you the disc, Mr. Gasca.  You will take it, look at it.

12  We will be back next Tuesday at 1:30 p.m.

13          THE DEFENDANT:  May I say one thing, Your Honor.

14          THE COURT:  Go ahead, sir.

15          THE DEFENDANT:  Just as a benchmark, without

16  giving away what I'm looking for, I have on my phone 25 gigs of

17  music.  So a music file can be played anywhere.  I haven't seen

18  that.

19          THE COURT:  There is some music on this.

20          THE DEFENDANT:  Okay.

21          THE COURT:  There's music.  There's music on

22  here.

23          THE DEFENDANT:  Let's see.

24          THE COURT:  I don't know all of it.  I clicked on

25  a file, and a song came up.

```
 1                    THE DEFENDANT:  Okay.

 2                    THE COURT:  When you look at the disc, I think at

 3    the bottom it has pdf files.

 4                    THE DEFENDANT:  I will go through everything.

 5                    THE COURT:  It has tabs of those.  It says

 6    audio -- some of them say deleted.  I don't know what that

 7    means.  Some of them don't.  You click on it, and like I said,

 8    I saw a video of "The Gathering."  I clicked on some music,

 9    clicked on some advertising.  And I used the VLC player.  Okay.

10                    THE DEFENDANT:  Even if what you are saying was

11    true -- and it's not -- but even if what you are saying is

12    true, when you would put the disc in, it would just come up

13    whatever it doesn't read.  So it would read the audio.  It

14    would read the video.  It would read whatever.  Then whatever

15    discs weren't readable, it would come up unreadable.  You

16    wouldn't be able to open them in a program.  But it would not

17    be, I put the disc in and it's not working.  I can't get no

18    access to the disc.

19                    MR. REIDY:  Your Honor, can I just ask, just

20    because Mr. Gasca has not had an opportunity to see what I

21    think he's looking for which is already on the flash drive, if

22    he does have an opportunity to look at it and realizes that it

23    is, in fact, what we represent that it is, the contents of his

24    phone and SD card, could he notify the Court through

25    Mr. Chambers so we can maybe just put this issue to bed?
```

```
 1              THE COURT:  No, because he's -- he's not going to
 2   talk to Mr. Chambers.  He's going to write a letter.  I'm not
 3   going to get it for another seven to ten days.  I just have to
 4   deal with it.  That's just the reality.
 5              THE DEFENDANT:  Your Honor, if that is the case,
 6   I can send a message to my investigator.
 7              THE COURT:  Fine.  I will see you next Tuesday.
 8   I will ask my courtroom deputy to give this to Mr. Chambers,
 9   and he can give it to you.
10              THE DEFENDANT:  Thank you, Your Honor.
11              THE COURT:  So I will see you all next Tuesday.
12   We will have to see what happens from there.
13              Anything further from the Government?
14              MR. REIDY:  No, Your Honor.  Thank you.
15              THE COURT:  Anything further, Mr. Gasca?
16              THE DEFENDANT:  No, Your Honor.
17              THE COURT:  Okay.  Thank you.
18              THE CLERK:  All rise.
19              (Proceedings concluded at 3:15 p.m.)
20
21
22
23
24
25
```

CERTIFICATE OF OFFICIAL REPORTER

1

2

3

4

5            I, MIRANDA ALGORRI, FEDERAL OFFICIAL REALTIME

6  COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7  THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8  PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9  FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10 STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11 ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12 CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13 THE UNITED STATES.

14

15            DATED THIS  1ST  DAY OF MARCH, 2024.

16

17

18            /S/ MIRANDA ALGORRI

19            _____
             MIRANDA ALGORRI, CSR NO. 12743, CRR
20           FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25